IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02114-PAB-MJW

NEAL O'NEILL,

Plaintiff,

v.

CORRECTIONAL HEALTHCARE COMPANY,
RN KATHY ROBINSON, Director of Medical,
DOCTOR HOWARD,
SHERIFF DEPUTY NUNCIO, and
NURSE MUZZY,

Defendants.

---

## REPORT & RECOMMENDATION ON

### DEFENDANT NUNCIO'S MOTION TO DISMISS CLAIMS FIVE AND SIX
#### (Docket No. 24), AND

### DEFENDANTS CHC, HOWARD, ROBINSON, & MUZZY'S MOTION TO DISMISS
### CLAIMS THREE AND FOUR
#### (Docket No. 50)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Plaintiff brings this suit against medical providers at a sheriff's deputy at the El

Paso County Jail, alleging violations of his constitutional rights and his rights under the

Americans with Disabilities Act ("ADA").  All Defendants have moved to dismiss, and

District Judge Philip A. Brimmer has referred those motions to the undersigned.

(Docket Nos. 24, 25, 50, 54.)

The Court has reviewed the parties' briefing (Docket Nos. 24, 50, 57, 58, 59),

taken judicial notice of the Court's entire file in this case, and considered the applicable

2

Federal Rules of Civil Procedure, statutes, and case law.  Now being fully informed, the

Court makes the following report and recommendation.

## Facts as Alleged in the Amended Complaint

Plaintiff has been on permanent disability since 2009.  (Docket No. 10, p.11.)

This case alleges various medical and other deprivations suffered while in El Paso

County Jail.

Plaintiff alleges that his medically-prescribed knee brace was removed as soon

as he was remanded to the custody of El Paso County Sheriff.  (*Id.* at 6.)  Within two

hours of booking, Plaintiff visited the medical department—but his request for the brace

was denied.  (*Id.* at 11.)  After five weeks of further grievances, Plaintiff saw Dr. Herr,

the lead provider.  (*Id.* at 12.)  Herr ordered that Plaintiff be provided a walking cane.

(*Id.*)  Later, however, Defendant Muzzy—a nurse—ordered that Plaintiff's cane be taken

away from him.  (*Id.* at 8, 12.)  Dr. Herr also apparently ordered that Plaintiff be allowed

his home supply of PreserVision tablets (vitamins used to delay macular degeneration)

and that Plaintiff be given 30 days of medicine for toenail fungus.  (*Id.* at 12.)  These

treatments were not continued by Dr. Herr's successor Dr. Howard, despite Plaintiff's

efforts to raise the matter with medical personnel.  (*Id.* at 12-13.)

Following further grievances, Defendant Nuncio retaliated by directing a nurse to

withhold Plaintiff's diabetes and blood pressure medications.  (*Id.* at 7, 14.)  Defendant

Nuncio forged Plaintiff's signature on a form stating that Plaintiff refused his morning

doses.  (*Id.* at 14.)  Plaintiff received his medications just over seven hours later.  (*Id.*)

Defendant Nuncio then wrote Plaintiff up for deviant and delinquent behavior and placed

3

him in administrative segregation for five days.  (*Id.* at 15.)  In administrative

segregation, Plaintiff was "stripped of all under clothing and handed a blanket"; further,

he was denied commissary items, sheets and pillow cases, and personal visitations,

and he was not allowed to disinfect the mattress, toilet, sink, floor, and walls.  (*Id.*)

## Further Facts

Plaintiff makes further allegations both in his initial complaint and in briefing these

motions.  Such allegations are not cognizable for purposes of the motions to dismiss;

however, they may be relevant to whether Plaintiff can save his claims in an amended

pleading.  *Cf. Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014) ("Complaints

drafted by pro se litigants . . . are not insulated from the rule that dismissal with

prejudice is proper for failure to state a claim when it is obvious that the plaintiff cannot

prevail on the facts he has alleged and it would be futile to give him an opportunity to

amend." (internal quotation marks omitted)).

Plaintiff's original complaint alleges that both the vitamins for his macular

degeneration and the medication for toenail fungus (but not the walking cane) were

resumed upon Dr. Herr's return to the facility, after six months' absence.  (Docket No. 1,

p.19.)  Later, however, the facility discontinued the eye vitamins unless he saw an

outside specialist; Plaintiff refused to do so, because he believed the existing medical

opinions were sufficient and because he did not want to be charged for the cost of the

visit.  (*Id.* at 20.)

In Plaintiff's objection to the medical defendants' motion to dismiss, Plaintiff

concedes that he has completed his sentence in Colorado, has been extradited to

4

California, and is no longer in the custody of the El Paso County Jail.  (Docket No. 57, p.1.)  Plaintiff further alleges that he "suffered pain daily" without his knee brace and walking cane, that without them he "was in risk of re-injury," and "the pain was endless in [his] knees and lower back."  (*Id.* at 3.)  Further, he has "lost a total of 361.51% of vision."  (*Id.*)  Plaintiff further states that he "will never recover the lost vision" and "will not ever be allowed to drive."  (*Id.* at 10.)

As evidence that the El Paso County Jail's failure to provide these treatments was wrongful, Plaintiff alleges that his California facilities, both state and federal, have provided them.  (*Id.* at 4.)  Further, it took Plaintiff six months to recover the mobility he lost in the El Paso County Jail due to the lack of mobility aids.  (*Id.* at 5.)  The arthritic conditions have spread to his hips, allegedly as a result of this lack of mobility aids.  (*Id.* at 6.)  Plaintiff further states that Defendants were aware that he was permanently disabled, because he provided them with records of his disability income and his previous prison medical records.  (*Id.* at 6-7.)

Finally:

> Threats were made by Defendant Zamora [nee Muzzy] that she would take my cane if she saw me not using it, when I was holding my dinner plate and cup to be seated.  And when the cane was taken, it was under the table on my lap, hidden from view, so she then instructed sheriff deputy to find and take it.

(*Id.* at 9.)  Defendant Muzzy "was not instructed to have an officer take [Plaintiff's] cane, which hindered [his] mobility, caused increased swelling in [his] knees, along with ample documented pains."  (Docket No. 59, p.6.)

5

## Discussion

On preliminary screening under 28 U.S.C. § 1915(e), Senior Judge Babcock allowed four claims to proceed:

- Count Three, under either § 1983 or the ADA, alleges that Defendant Muzzy violated Plaintiff's rights by taking his walking cane;

- Count Four, under either § 1983 or the ADA, alleges that Defendants Robinson and Howard violated Plaintiff's rights by denying him eye vitamins and medication for toenail fungus, in addition to denying the mobility aids;

- Count Five, under § 1983, alleges that Defendant Nuncio violated Plaintiff's rights by refusing him his morning dose of diabetes and blood-pressure medication; and

- Count Six, under § 1983, alleges that Defendant Nuncio violated Plaintiff's rights by placing him in administrative segregation in cruel and unusual conditions.

(Docket No. 15, p.10; Docket No. 10, pp. 12-15.)  Plaintiff's complaint seeks monetary relief.  (Docket No. 10, p.19.)  On a motion to dismiss, the Court accepts Plaintiff's well-pleaded facts to be true, draws all reasonable inferences from those facts in Plaintiff's favor, and determines whether the Plaintiff has alleged facts plausibly suggesting that Defendants are liable.  *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

## I. ADA Claims

Defendants argue that, because Plaintiff is no longer at the El Paso County Jail. any claim for injunctive relief is moot and, therefore, outside this Court's Article III jurisdiction.  *See Rhodes v. S. Nazarene Univ.*, 554 F. App'x 685, 689-90 (10th Cir. 2014) (citing, *inter alia*, *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)).  Defendants are correct, but the argument is somewhat beside the point—because Plaintiff does not seek injunctive relief.  (*See* Docket No. 10, p.19.)

6

Defendants also argue that "[t]he allegations contained in Plaintiff's Complaint can only be construed as a claim under Title II of the ADA," and, further, "Plaintiff's sole remedy under Title II is injunctive relief." (Docket No. 50, p.4, citing *Colo. Cross Disability Coalition v. Hermanson Family Ltd. Pshp.*, 264 F.3d 999, 1001 (10th Cir. 2001), and *Dahlberg v. Avis Rent a Car Sys.*, 92 F. Supp. 2d 1091, 1100 (D. Colo. 2000).) The Court agrees that Plaintiff's ADA claim can be brought only under Title II. But it is not true that Plaintiff's sole remedy under Title II is injunctive relief. The Tenth Circuit has specifically held: "Title II authorizes suits by private citizens for money damages against public entities that violate [42 U.S.C.] § 12132." *See Guttman v. Khalsa*, 669 F.3d 1101, 1112 (10th Cir. 2012) (citing 42 U.S.C. § 12133)). The cases Defendants rely on discuss Title III of the ADA, not Title II, and they are therefore of little use here.

Defendants' better argument is government contractors do not become liable as "public entities" under Title II simply by virtue of providing services pursuant to a public contract. *Phillips v. Tiona*, 508 F. App'x 737, 747-54 (10th Cir. 2013). To the extent Plaintiff has an ADA claim under Title II, he must bring it against El Paso County, not the county's medical contractors. *Id.* at 753-54. Further, Defendants cannot be liable in their individual capacities under Title II. *Montez v. Romer*, 32 F. Supp. 2d 1235, 1240-41 (D. Colo. 1999). The Court recommends that Counts Three and Four be dismissed insofar as they are brought under the ADA.

7

## II.   **Constitutional claim against Defendant Muzzy**

Count Three alleges that a doctor ordered that Plaintiff be allowed a cane, and that Defendant Muzzy took it away—violating the Eighth Amendment on a deliberate-indifference theory.  Unlike Title II of the ADA, 42 U.S.C. § 1983 extends to government contractors and to individuals.  *West v. Atkins*, 487 U.S. 42, 57 (1988).  To establish an Eighth Amendment violation based deliberate indifference to serious medical need, Plaintiff must allege both an objective component and a subjective component. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  Defendants argue that Plaintiff has failed to allege either component plausibly.

As Judge Brimmer has explained:

> The Eighth Amendment does not reach a prison official's conduct unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  An action unaccompanied by a subjective awareness of an unreasonable risk of harm does not constitute "punishment" within the meaning of the Eighth Amendment.  A court may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.  However, even if the risk of harm is obvious, the inquiry does not end.  If a prison doctor, for example, responds to an obvious risk with treatment that is patently unreasonable, a jury may infer conscious disregard.  But where a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law.  The negligent conduct of a prison official is, in all cases, insufficient to rise to the level of deliberate indifference.

*Sherman v. Klenke*, 67 F. Supp. 3d 1210, 1215 (D. Colo. 2014) (internal citations, quotation marks, and footnote callout omitted).

Intentionally acting contrary to doctor's orders can support a deliberate indifference claim.  *See, e.g.*, *Purkey v. Green*, 28 F. App'x 736, 742-44 (10th Cir.

2001); *Andrews v. Hanks*, 50 F. App'x 766, 869 (7th Cir. 2002).  But there are no specific facts alleged in the Amended Complaint plausibly suggesting that Defendant Muzzy intentionally acted contrary to doctor's orders.  Indeed, in briefing the motion, Plaintiff suggests instead that Defendant Muzzy was watching for signs of malingering, not willfully ignoring a known harm.  (*See* Docket No. 57, p.9.)  This suggests that Plaintiff would not be able to plead facts sufficient to state the subjective component of a deliberate-indifference claim, if given further leave to amend.  Accordingly, the Court recommends that Count Three be dismissed insofar as it is based on a constitutional violation.

### III.   Constitutional claim against Defendants Robinson & Howard

Count Four alleges that Defendants Robinson and Howard refused to provide vitamins for Plaintiff's macular degeneration, treatment for toenail fungus, or mobility aids—violating the Eighth Amendment on a deliberate-indifference theory.

As Judge Brimmer has explained, as to the objective component of a deliberate-indifference claim:

> A medical need is sufficiently serious so as to satisfy the objective component if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  The purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering.  Where a prisoner claims that harm was caused by a delay in medical treatment, he must show that the delay resulted in substantial harm.  Thus, the objective component may be satisfied by lifelong handicap, permanent loss, or considerable pain.

*Welsh v. Bishop*, 2015 WL 1064155, at *3 (D. Colo. Mar. 9, 2015) (internal citations, quotation marks, and alteration notations omitted).  Plaintiff's allegations as to toenail

fungus do not meet this threshold, *see Aragon v. Baroni*, 2014 WL 3562998, at *7-8 (D.

Colo. July 18, 2014) (surveying cases), and there is no indication in Plaintiff's original

complaint or in his briefing that other facts could be alleged that would raise this malady

to a constitutional magnitude.

The subjective component of a deliberate-indifference claim requires that the

defendant "must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Sherman*,

67 F. Supp. 3d at 1215.  The subjective standard requires a state of mind "akin to

recklessness in the criminal law, where, to act recklessly, a person must consciously

disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th

Cir. 2006) (internal quotations and further citation omitted).  Plaintiff's amended

complaint contains no allegations sufficient to show that either Defendant Howard or

Defendant Robinson were personally aware of any specific harms to Plaintiff from his

macular degeneration or from his back- and knee-related mobility issues.  Further,

nothing in Plaintiff's original complaint or in his briefing suggests that these two

Defendants were aware of Plaintiff's complaints of mobility-related pain or of rapidly

degenerating eyesight; at best, these Defendants can be alleged to have worked in the

same office as other doctors who had more complete information, and to have had a

difference of medical opinion as to the degree of Plaintiff's maladies.  But where

plaintiffs' allegations "are so general that they encompass a wide swath of conduct,

much of it innocent, then the plaintiffs 'have not nudged their claims across the line from

conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Accordingly, the Court recommends that Count Four be dismissed insofar as it is

based on a constitutional violation.

**IV.    Constitutional claims against Defendant Nuncio**

Count Five alleges that Defendant Nuncio caused Plaintiff to miss one dosage of

diabetes and blood-pressure medication, violating the Eighth Amendment on a

deliberate-indifference theory.   "Delay in medical care only constitutes an Eighth

Amendment violation where the plaintiff can show that the delay resulted in substantial

harm." *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citing *Olson v.*

*Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)).   Nothing in Plaintiff's amended complaint

alleges any repercussions from going without medication for seven hours.   As a result,

the incident does not rise to the level of a constitutional claim.   Nothing in Plaintiff's

original complaint or briefing on the motions to dismiss suggests that he can allege

further facts showing substantial harm.   Accordingly, the Court recommends that Count

Five be dismissed.

Count Six alleges that Defendant Nuncio caused Plaintiff to be placed in

administrative segregation without his under clothing or his commissary supplies,

violating the Eighth Amendment on a conditions-of-confinement theory.   The Eighth

Amendment prohibits conditions of confinement that fall below the "minimal civilized

measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).   Judge

Arguello recently considered a similar case, *Mauchlin v. Bier*, 2010 WL 419397, at *8

11

(D. Colo. Jan. 28, 2010), *aff'd*, 396 F. App'x 519 (10th Cir.).  There, the Plaintiff alleged

that being left in administrative segregation in only his boxers and a T-shirt, with a

blanket and mattress, violating Eighth Amendment.  Judge Arguello surveyed the

closest precedents:

- *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir.1996), in which the a constitutional violated was found where the inmate was left naked in a cell with no blankets or other bedding, no heat, and outside temperatures in the 50s, for a period of many days, possibly weeks;

- *Hawkes v. Wyoming Dep't of Corr. Honor Conservation Camp*, 124 F.3d 216, 1997 WL 545594 (10th Cir. September 4, 1997) (unpublished), in which no constitutional violation was found where the inmate was placed in a cold, unheated detention cell for five days in January, but had bedding and blankets; and

- *Ogbolu v. McLemore*, 107 F.3d 21, 1997 WL 49449, at *2 (10th Cir. Feb. 7, 1997) (unpublished), in which no constitutional violation was found where the inmate was placed in a cold, wet, drafty, and unsanitary solitary cell for two days, but had blankets and a bed.

*Mauchlin*, 2010 WL 419397, at *8 (D. Colo. Jan. 28, 2010).  Judge Arguello concluded

that the plaintiff in her case alleged facts considerably closer to *Hawkes* and *Ogbolu*,

and that—even if those facts *did* amount to a violation—the defendants were entitled to

qualified immunity because the violation was not clearly established at the time.  *See*

*Saucier v. Katz*, 533 U.S. 194, 202 (2001) (standards for qualified immunity).

The result is the same here.  Plaintiff alleges only that *some* clothing was taken

from him (along with commissary items and visitation rights), but that he was given a

blanket.  There's no allegation that he had no bed at all; rather, he alleges that his

commissary-purchased bed sheets and pillowcases were taken.  Under Tenth Circuit

precedent, this does not rise to the level of a constitutional claim—and certainly not the

12

level of a clearly established claim.  Nothing in Plaintiff's original complaint or briefing on

the motions to dismiss suggests that he can allege further facts on this point.

Accordingly, the Court recommends that Count Six be dismissed.

### Recommendation

It is RECOMMENDED that:

- Defendant Nuncio's Motion to Dismiss Claims Five and Six of Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 8 & 12(b)(6) (Docket No. 24) be GRANTED;

- Defendants Correctional Healthcare Company, Dr. Jacqueline Howard, Kathy Robinson, and Amanda Zamora's Motion to Dismiss (Docket No. 50) be GRANTED; and

- The Amended Complaint (Docket No. 10) be DISMISSED with prejudice, in its entirety.


**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Dated:      February 24, 2016             _/s/ Michael J. Watanabe_____
            Denver, Colorado              Michael J. Watanabe
                                          United States Magistrate Judge